Rhonda Lynn LAY, Appellant,

v.

Alvin DWORMAN; Daltex Capital Corporation, a Texas corporation; Willow Creek Condominiums, Inc., an Oklahoma corporation; Willow Creek I Neighborhood Association, Inc., an Oklahoma corporation; Willow Creek II Neighborhood Association, Inc., an Oklahoma corporation, Appellees.

No. 60770.

Supreme Court of Oklahoma.

Dec. 16, 1986.

As Corrected on Denial of Rehearing Feb. 2, 1987.

Parks & Beard by Michael J. Beard, Tulsa, for appellant.

Rhodes, Hieronymus, Jones Tucker & Gable by Richard M. Eldridge, Tulsa, for appellee Willow Creek Condominiums, Inc.

Knight, Wagner, Stuart, Wilkerson & Lieber by Mark S. Darrah and Alfred B. Knight, Tulsa, for appellee Willow Creek I Neighborhood Ass'n, Inc.

LAVENDER, Justice:

Appellant, Rhonda Lynn Lay, was assaulted and raped in her apartment in an apartment/condominium complex in Tulsa, Oklahoma. This suit was initiated against the parties owning interests in the complex at the time appellant rented her apartment and at the time of the assault. The petition and later amended petition sought recovery on two theories—negligence and breach of warranty. Appellant also sought the recovery of punitive damages, alleging that appellees were guilty of gross negligence in subjecting appellant to an unsafe residence. Demurrers were sustained to appellant's initial petition and to her amended petition on the ground that they had failed to state a cause of action. Upon the sustainment of the demurrer to the amended petition appellant elected to stand upon her pleading and the case was dismissed. Appellant then initiated the present appeal.

This case was initially assigned to the Oklahoma City Divisions of the Court of Appeals. The Court of Appeals affirmed the trial court's ruling without opinion in an accelerated docket disposition. Appellant subsequently petitioned this Court for writ of certiorari to review that disposition. We have previously granted certiorari.

We have previously stated the standard to be applied to determine the propriety of a trial court's ruling on a demurrer to a petition: [1]

> The Court, when confronted with a demurrer, has the duty to liberally construe the challenged petition and to take as true all the factual allegations and the reasonable inferences drawn therefrom. If the Court finds any fact stated in the petition which entitles the plaintiff to any relief, the Court must overrule the demurrer. *Rotramel v. Public Service Co.*, 546 P.2d 1015, [1019] (Okl.1975); *Johnson v. Steward*, 397 P.2d 907 (Okl.[1964]). The Court will not assume facts in favor of the petitioner which

---

1. *White v. Wint*, 638 P.2d 1109, 1112 (Okla. 1981).

have not been averred, "since the law does not presume that a party's pleadings are less strong than the facts of the case warrant." *Westheimer v. Byrne,* 110 Okl. 107, 109, 236 P. 589, 591 (1925).

## I.

Appellant's theory of recovery in negligence averred the following facts; 1) that the trial court had jurisdiction over the subject matter and all of the parties; 2) that all of the named appellees had interests in the apartment complex; 3) that appellant was a sublessee of an apartment in the complex; 4) that appellees knew of criminal activities, including other rapes, in the apartment complex and that appellant had complained of a defective lock on a sliding glass door in her apartment; 5) that an intruder had gained access to her apartment and had raped her; 6) that appellees had been negligent in failing to repair the malfunctioning lock and in failing to provide appellant with a safe and secure residence; and 7) that as a result of this negligence appellant had suffered damages.

In order to state a cause of action for recovery under a negligence theory certain elements must be present. These elements are: the existence of a duty; a subsequent breach of that duty; and an injury to the plaintiff proximately flowing from the breach of that duty.[2]

The present case, at threshold level, requires that this Court examine the question of a landlord's duty to protect a tenant from the criminal activities of third parties. In support of her position, appellant urges this Court to adopt an expanded view of this duty typified by the United States Court of Appeals for the District of Columbia in the case of *Kline v. 1500 Massachusetts Avenue Apartment Corp.*[3] In *Kline,*[4] the Court stated:

As a general rule, a private person does not have a duty to protect another from a criminal attack by a third person. We recognize that this rule has some-

times in the past been applied in landlord-tenant law, even by this court. Among the reasons for the application of this rule to landlords are: judicial reluctance to tamper with the traditional common law concept of the landlord-tenant relationship; the notion that the act of a third person in committing an intentional tort or crime is a superseding cause of the harm to another resulting therefrom; the oftentimes difficult problem of determining foreseeability of criminal acts; the vagueness of the standard which the landlord must meet; the economic consequences of the imposition of the duty; and conflict with the public policy allocating the duty of protecting citizens from criminal acts to the government rather than the private sector.

But the rationale of this very broad general rule falters when it is applied to the conditions of modern day urban apartment living, particularly in the circumstances of this case. The rationale of the general rule exonerating a third party from any duty to protect another from a criminal attack has no applicability to the landlord-tenant relationship in multiple dwelling houses. The landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to this tenants. (footnotes omitted)

In the oft-cited *Kline* case the District of Columbia Court reexamined the basic nature of the landlord-tenant relationship in reaching the conclusion that there was a duty to protect tenants from foreseeable

---

**2.** *Sloan v. Owen,* 579 P.2d 812 (Okla.1977).

**3.** 439 F.2d 477 (D.C.Cir.1970).

**4.** Id. at 481.

criminal activities. In doing so the court concluded that the relationship of innkeeper-guest as recognized in the common-law courts was more attuned to the actual relationship of landlord-tenant as it exists in modern apartment dwellings. The court determined that the modern lease should be treated as a contract and that one of the terms implied in the contract was the innkeeper's duty to exercise reasonable care in protecting the guest/tenant.

*Kline,* however, dealt with an assault on a tenant in a common area of the apartment building. Upon consideration we do not feel that an expansion of the possible liability of a landlord of the magnitude imposed in *Kline* is either necessary or desirable. Under present Oklahoma law a landlord has the duty to use ordinary care to maintain the common portions of leased premises, over which he has retained control, in a safe condition.[5] In this regard the Restatement (Second) of Torts § 448 (1965), notes that:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

This principle is clearly in accord with Oklahoma law.[6]

Applying this principle to the landlord-tenant situation we can define the duty owed by the landlord as being a duty to use reasonable care to maintain the common areas of the premises in such a manner as to insure that the likelihood of criminal activity is not unreasonably enhanced by the condition of those common premises.

Aside from the duty of the landlord arising from traditional principles relating to the duty to maintain common areas of the premises, this case also requires consideration of the landlord's duty to maintain the actual security of the leased premises themselves. Where the premises provided are inadequately secured due to ineffective or defective materials, a duty on the part of the landlord to provide repairs or modifications would arise upon notification of the defect by the tenant. This duty arises from the landlord-tenant contract and from the implication that the landlord is to provide services under the contract in a diligent manner.[7] That the landlord must furnish these services is in turn necessarily implied under Oklahoma law in order to insure the reasonability of the contractual agreement.[8]

The principles announced by the Tenth Circuit Court of Appeals, applying Oklahoma law, in the case of *Missouri-Kansas-Texas Railroad Co. v. Ingram,*[9] illustrate the coalescence of the duty resulting from the landlord's contractual retention of control over the premises and the principles stated in Restatement section 448:[10]

> Every person is under a duty to exercise due care in using that which he controls so as not to injure others, but in order for such duty to arise, the person to be charged therewith must have knowledge or notice that his act or omis-

---

5. *Geesing v. Pendergrass,* 417 P.2d 322 (Okla. 1966).

6. See *Brodsky v. Atchison, Topeka and Santa Fe Ry.,* 368 P.2d 852 (Okla.1961); and see also *Minor v. Zidell Trust,* 618 P.2d 392 (Okla.1980).

7. See *Keel v. Titan Construction Corp.,* 639 P.2d 1228 (Okla.1981).

8. See 15 O.S.1981 § 171, which states:

Stipulations which are necessary to make a contract reasonable or conformable to usage, are implied in respect to matters concerning which the contract manifests no contrary intention.

9. 322 F.2d 286, 291 (10th Cir.1963).

10. Restatement (Second) of Torts, § 448 (1965), supra.

sion involves danger to another.... (footnotes omitted)

Thus, by retaining control over aspects of the premises such as door and window locks or alarm devices which directly relate to security, the landlord faces potential liability when the circumstances are such that a reasonable man would realize that a failure to act would render one relying on those actions susceptible to criminal acts.

These principles appear to form the foundation for the landlord's liability in other jurisdictions in cases involving criminal acts within the rented premises. The element of foreseeability in these cases has been found from a history of criminal activity in the apartment complex or building,[11] or strictly from the nature of the defect in the premises.[12]

A third area of liability in the landlord-tenant relationship arises out of the principles embodied in the Restatement (Second) of Torts, § 323 (1965):[13]

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

Our focus in this analysis upon the application of traditional principles of negligence in the landlord-tenant relationship to determine the duties owed to the tenant, and our focus upon the duty of the landlord to prevent the enhancement of opportunities for the infliction of criminal acts upon his tenants, is intended to provide a more solid basis for the development of this area of law than we find to be contained in the *Kline* court's, "duty ... to minimize the predictable risk to his tenants." In taking this position we are mindful of the problems inherent in this field which are reflected in the following language from the California Court of Appeals:[14]

In this day of an inordinate volume of criminal activity, there are a myriad of "security devices" available to the public, including the hiring of armed guards. No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation. While bright lights may deter some, they will not deter all. Some persons cannot be deterred by anything short of impenetrable walls and armed guards.

It would be intolerable and grossly unfair to permit a lay jury, after the fact, to determine in any case that security measures were "inadequate," especially in light of the fact that the decision would always be rendered in a case where the security had in fact proved to be inadequate.

## II.

Based upon the foregoing analysis, appellant's amended petition does state an extant duty on the part of appellees flowing from their averred knowledge of criminal activities in the complex and the knowledge of the defective lock in appellant's apartment. The petition further avers a breach of that duty by alleging that appellees had been informed by appellant of the defective lock and had failed to make necessary repairs. Finally the petition avers that an unknown intruder gained en-

11. See *Warner v. Arnold,* 133 Ga.App. 174, 210 S.E.2d 350 (1974); *Ten Associates v. McCutchen,* 398 So.2d 860 (Fla.Ct.App.1981); and *Riley v. Marcus,* 125 Cal.App.3d 103, 177 Cal.Rptr. 827 (1981).

12. See *Braitman v. Overlook Terrace Corp.,* 68 N.J. 368, 346 A.2d 76 (1975) (dead bolt lock in apartment had been reported as defective, burglars slipped a second, inadequate door lock.)

13. See also *Scott v. Watson,* 278 Md. 160, 359 A.2d 548, 555 (1976).

14. *7735 Hollywood Boulevard Venture v. Superior Court,* 116 Cal.App.3d 901, 172 Cal.Rptr. 528, 530 (1981).

trance to her apartment and that she was assaulted and suffered injury as a result of this intrusion. To the extent that the cases of *McMillin v. Barton-Robison Convoy Co.*, 182 Okla. 553, 78 P.2d 789 (1983); *Davis v. Allied Supermarkets, Inc.*, 547 P.2d 963 (Okla.1976); and *Horst v. Sirloin Stockade, Inc.*, 666 P.2d 1285 (Okla.1983), express views inconsistent with our finding of a duty on the part of the landlord in this case, those cases are expressly disapproved.

Axiomatically, in order to state a cause of action in negligence an alleged breach of duty must proximately result in the injury to the party seeking to recover for that injury. The demurrer in question here admitted the evidentiary facts pled by the amended petition.[15] The demurrer also admitted all reasonable inferences to be drawn from those facts.[16] The question here is whether, from the facts stated, a reasonable inference may be drawn that the unknown assailant did enter as a result of the defective lock and thus complete the link between appellees' alleged breach of duty and the injury to appellant. This fact is not specifically averred. However, we find that a reasonable inference may be drawn from the facts stated that the proximate causation link has been asserted. Such a result is in keeping with the court's duty to construe the facts stated and inferences to be drawn therefrom liberally in favor of appellant.[17] For this reason we find the demurrers to appellant's amended petition were not properly sustained as to appellant's first stated theory of recovery.

### III.

Appellant's amended petition also sought recovery under breach of warranty theory. To support this theory appellant alleged: 1) that appellees had warranted to the general public and to appellant that the apartment complex was secure and had security; 2) that appellant had relied on these warranties and the implied warranty of habitability in occupying her apartment; 3) that appellees breached these warranties by failing to provide a safe apartment, by failing to provide a sufficient number of security personnel, and by failing to provide a properly lighted apartment area; and 4) that as a result of these breaches of warranty appellant suffered injury.

In order to find that appellant's second theory of recovery would support a claim for relief, we would be required to consider the allegations concerning the general warranty of security by appellees to give rise to an assumption of absolute insurance of appellant's safety. Otherwise appellant's amended petition may not be found to have shown any causative link between the alleged "breach" of these warranties and the injury to appellant. To find a cause of action arising from the mere fact that appellees allegedly stated the complex to be secure and the fact that an intruder gained access to appellant's apartment runs directly afoul of the factors which we considered in limiting a landlord's possible tort liability by the application of traditional tort concepts.

We have rejected the concept that the landlord-tenant relationship itself gives rise to the landlord's being placed in a position of quasi-guarantor of the tenant's safety. We also reject the concept that a statement regarding the security of a complex, in and of itself, establishes a landlord's liability for criminal activities within the complex in the absence of facts establishing a causal connection between the alleged breach of warranty and the injury. In this case appellant alleged the breach and alleged the injury but failed to show how the existence of the breach resulted in the injury. We are presented instead with a mere conclusion that the alleged breach was responsible for the injury. The ab-

**15.** *White v. Wint,* supra, note 1; *Keel v. Titan Construction Corp.,* supra, note 7.

**16.** *Rotramel v. Public Service Co.,* 546 P.2d 1015 (Okla.1975); *Penley v. Gulf Ins. Co.,* 414 P.2d 305 (Okla.1966).

**17.** *McCullough v. Cities Service Co.,* 676 P.2d 833 (Okla.1984).

sence of facts to support the element of causation in appellant's amended petition rendered that pleading incapable of stating a claim upon which relief could be granted.[18]

### IV.

The opinion of the Court of Appeals in this matter is VACATED. The order of the trial court as it relates to the sustainment of demurrers to appellant's first pled theory of recovery is REVERSED. The order of the trial court as it relates to the sustainment of demurrers to appellant's second pled theory of recovery is AFFIRMED. The cause is REMANDED to the trial court for further proceedings consistent with this opinion.

OPALA, WILSON and KAUGER, JJ., concur.

DOOLIN, V.C.J., concurs in Part I, II and IV; dissents from Part III.

SUMMERS, J., concurs in Parts I, III and IV; concurs in result as to Part II.

SIMMS, C.J., and HODGES and HARGRAVE, JJ., dissent.

18. See *Chastain v. Parkhurst*, 473 P.2d 239 (Okla.1970); *Weston v. Acme Tool, Inc.*, 441 P.2d 959 (Okla.1968).