Lois and Jeffery CORDES, Appellants,

v.

C.R. and Wilma WOOD, individuals and the Wood Family Trust, C.R. and Wilma Wood, Co–Trustees, Appellees.

No. 81962.

Supreme Court of Oklahoma.

May 28, 1996.

---

Randal D. Morley and Donna J. Priore, Birmingham, Morley, Weatherford, & Priore, Tulsa, for Appellants.

A. Mark Smiling and Scott R. Taylor, Tulsa, for Appellees.

SUMMERS, Justice.

A tenant was raped in her rented home when a stranger broke in through a locked door. She and her husband sued the landlord for maintaining ineffective locks. The trial court ordered summary judgment for landlord and the Court of Appeals affirmed. We find several material facts in controversy and reverse.

In 1990 Lois Cordes was raped in her duplex when an assailant gained entry through a side door. Her two-year-old son and four-year-old daughter were in the home at the time of the attack. Jeffery and Lois Cordes had lived in the duplex for two years. The Cordes allege that before they moved in, and after, they asked "numerous times" that deadbolt locks be installed, and the landlord refused, because if a person wanted to get in a deadbolt would not keep him out. The Cordes claim that they also asked if they could install deadbolts at their own expense, but that the landlord refused because he did not want his doors torn up. Once prior to this rape a person had allegedly tried to break his way in, beating on the door, cursing plaintiffs' family, and saying "I hate white people you motherf____s". After this episode the Cordes state that they notified the police and also the landlord, and again asked for deadbolt locks to be installed. They say the landlord again refused.

The landlords, C.R. and Wilma Wood, disagree. They admit that the tenants asked for the installation of deadbolts but never offered to pay for them. They deny they were asked numerous times. They also deny that they ever refused to permit deadbolts to be installed by or at the expense of the tenants. They do not recollect the beating-on-the-door incident. After the rape the Woods installed deadbolt locks.

The landlords moved for summary judgment. Both parties attached copies of the tenants' depositions in support of their positions. The Cordes also attached an affidavit by a professional security consultant. This affidavit reported numerous criminal acts having occurred in the immediate area surrounding the duplex, from which the witness concluded that the area was a high crime neighborhood. The security expert stated, by his affidavit, that poor lighting and inadequate locks made the attack on Mrs. Cordes foreseeable, and that it was thus preventable. He stated that a deadbolt lock provides resistance to a pry bar such as was used in this incident. The trial court granted summary judgment to the landlords.

The Court of Appeals, Division I, affirmed the trial court. In so doing the Court of Appeals held that our opinion in *Lay v. Dworman*, 732 P.2d 455 (Okla.1986) and the Oklahoma Residential Landlord and Tenant Act, 41 O.S.1991 § 101 et seq., do not apply to a single-family dwelling. The court also held that the absence of a deadbolt lock created only a condition, not the cause, by which the chance of an assault was enhanced.

■ Summary judgment is proper only when there is a complete absence of disputed material facts. *Manora v. Watts Regulator Co.*, 784 P.2d 1056, 1058 (Okla.1989). When reviewing a motion for summary judgment the court may consider depositions, admissions, answers to interrogatories and affidavits. *Id.; Martin v. Chapel, Wilkinson, Riggs & Abney*, 637 P.2d 81, 84 (Okla.1981); *Weeks v. Wedgewood Village, Inc.*, 554 P.2d 780 (Okla.1976). The moving party has the burden of showing there is no substantial controversy as to any material fact. *Id.; Carris v. John R. Thomas & Associates*, 896 P.2d 522, 530 (Okla.1995). All conclusions drawn must be viewed in the light most favorable to the party opposing the motion. *Markwell v. Whinery's Real Estate, Inc.*, 869 P.2d 840, 845 (Okla.1994).

Landlords assert that summary judgment was proper because they had no duty to protect Tenants from the criminal acts of a third party, and that even if such a duty existed, that they did not breach that duty. To determine whether summary judgment was proper we look to the common law of landlords and tenants.

■ Courts have generally held that a private person does not have a duty to protect another from a criminal attack by a third person. *Lay v. Dworman*, 732 P.2d 455, 457 (Okla.1986) quoting *Kline v. 1500 Massachusetts Avenue Apt. Corp.*, 439 F.2d 477 (D.C.Cir.1970). But, "under present Oklahoma law a landlord has the duty to use ordinary care to maintain the common portions of leased premises, over which he has retained control, in a safe condition." *Id.* at 458; *see also Geesing v. Pendergrass*, 417 P.2d 322 (Okla.1966).

In *Lay v. Dworman*, supra, we examined the legal concepts of the landlord-tenant relationship. There, a tenant was assaulted and raped in her apartment. The tenant had notified the landlord of a defective lock on her apartment door. The landlord was also aware of other criminal activity in the area. The trial court dismissed the case. We reversed, holding that:

> [B]y retaining control over aspects of the premises such as door and window locks or alarm devices which directly relate to security, the landlord faces potential liability when the circumstances are such that a reasonable man would realize that a failure to act would render one relying on those actions susceptible to criminal acts.

*Id.* at 459. We continued by stating that the landlord has a duty to exercise reasonable care to "prevent the enhancement of opportunities for the infliction of criminal acts upon his tenants." *Id.*

■ A landlord's duty does not include the obligation to be an insurer against criminal attack. *Fontanez v. New York City Housing Authority*, 638 N.Y.S.2d 77, 78 (Sup.Ct.1996). As we held in *Mengel v. Rosen*, 735 P.2d 560 (Okla.1987) and *Rodgers v. Rosen*, 737 P.2d 562 (Okla.1987), a landlord's duty does not extend to some circumstances over which he or she has no control. In *Mengel*, the assailant most likely used the tenant's own keys to gain entry into her apartment. In *Rodgers*, the assailant gained entry through a second floor window by breaking it. Neither circumstance presented a situation in which the landlord was responsible for faulty or insufficient security.

■ As in the *Lay* holding, a review of cases from sister jurisdictions reveals that there is a trend toward imposing a duty on a landlord to act reasonably in preventing the enhancement of opportunities for criminal attacks. These courts have held that a landlord can be liable for those instances in which the landlord maintains exclusive control over the premises or devices by which the attack is made.[1] The cornerstones of this duty are

---

1. *Sipple v. Kaye*, 1995 WL 654139 (Oct. 30, 1995) (tenant's action for damage due to inadequate locks and the landlord's refusal to permit tenant to install additional locks required factual determinations by a jury); *Fontanez v. New York City Housing Authority*, —— A.D.2d ——, 638 N.Y.S.2d 77 (1996) (missing door handle which prevented a woman from escaping her attacker left a ques-

tion of fact for the jury); *Kuzmicz v. Ivy Hill Park Apts.*, 282 N.J.Super. 513, 660 A.2d 1208 (1995) (mugging on a vacant lot next to apartments in a high crime area gave rise to the landlord's duty to warn tenants); *Rodriguez v. Oak Point Mgmt. Inc.*, 205 A.D.2d 224, 618 N.Y.S.2d 772 (Sup.Ct. 1994) (tenant's visitor sued when he was shot outside apartment building in a crime area and

(1) foreseeability and (2) exclusivity of control.

Foreseeability was discussed in *Spitzak v. Hylands Ltd.*, 500 N.W.2d 154 (Minn.Ct.App. 1993), where the tenant was injured by children who struck and broke a window. The court acknowledged that a landlord can be held liable for the criminal acts of third persons in certain situations. However, there the landlord was not held responsible, because the "criminal act which resulted in injury to [tenant] is not the type of act which [landlord] could reasonably be expected to prevent." *Id.* at 157. In *O'Cain v. Harvey Freeman and Sons*, 603 So.2d 824, 830 (Miss. 1991) quoting *Kelly v. Retzer & Retzer*, 417 So.2d 556 (Miss.1982), the court held that foreseeability depends upon the facts of each case. "[A]n independent intervening cause is one that could not have been reasonably foreseen by the defendant while exercising due care." Thus, a landlord could be responsible for a criminal attack if he knows of ineffective security measures or if the ineffective measures enhance the probability of criminal attack. " . . . [A] duty will be imposed if a landlord's affirmative actions or omissions have unreasonably created or increased the risk of injury to the tenant from the criminal activity of a third party." *Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431, 436 (1995).

Another indication of foreseeability is the landlord's knowledge of prior criminal attacks. In *Brock v. Watts Realty Co.*, Inc., 582 So.2d 438 (Ala.1991), the court stated that a landlord is not generally liable for the criminal acts of a third party unless those acts are foreseeable by way of prior knowledge of other similar criminal behavior. Although prior criminal acts show a higher likelihood of attack, the court held that "the landlord's duty to reasonably provide protection from criminal attack does not have to be implied from prior similar occurrences on the leased premises." *Id.* at 440, *quoting Paterson v. Deeb*, 472 So.2d 1210, 1217 (Fla.Dist. Ct.1985). *See also Whittaker v. Saraceno*, 418 Mass. 196, 635 N.E.2d 1185 (1994).

*Newell v. Best Sec. Systems*, 560 So.2d 395, 396 (Fla.Dist.Ct.1990) agreed that prior criminal attacks are an important factor in determining foreseeability. Holding that foreseeability was a question for the jury, the court explained that to recover, "an injured tenant must prove that the landlord has knowledge of prior similar criminal conduct occurring on the premises." *Id.* at 397. Although *Newell* differs from *Brock* in that the *Newell* court requires a landlord's knowledge of prior acts to recover, both cases stand for the proposition that prior criminal acts are a factor in determining foreseeability. *See also Jack v. Fritts*, 193 W.Va. 494, 457 S.E.2d 431, 436 (1995).

As for the second cornerstone of duty— exclusivity of control—*Brock* is once again helpful. In *Brock*, the tenant, through an administratrix, brought suit for the failure to maintain proper locks. The tenant had notified the landlord of the faulty locks. The landlord urged that the tenant could have repaired the locks. The court disagreed, holding that the repair of the locks was within the exclusive control of the landlord:

> [A] lessor may not make a tenant responsible for repairing locks, such as here, allowing repairs only after obtaining the lessor's

court held that the landlord had minimal duty to safeguard building with proper locks); *Walls v. Oxford Mgmt. Co.*, 137 N.H. 653, 633 A.2d 103 (1993) (landlord may have a duty for a physical defect in property if landlord has exclusive control and defect enhanced the chances of invitee being sexually assaulted); *Brock v. Watts Realty Co.*, 582 So.2d 438 (Ala.1991) (legislature's enactment of a housing code which required locks showed an intent to make a landlord responsible for locks regardless of the terms of lease); *Newell v. Best Sec. Systems Inc.*, 560 So.2d 395 (Fla.App. 1990) (foreseeability of the criminal attack is the cornerstone to liability of a landlord). *But see Cramer v. Balcor Prop. Mgmt.*, 312 S.C. 440, 441 S.E.2d 317 (1994) (although trend is to impose liability, court declines to impose upon a land-

lord the duty to safeguard a tenant from criminal attack).

Likewise a landlord has been held responsible for failure to maintain premises in a safe condition where statute imposed a duty that was not present at common law. *Gore v. People's Sav. Bank*, 235 Conn. 360, 665 A.2d 1341 (1995) (a landlord is responsible for keeping premises reasonably safe from harms such as lead-based paint); *Reed v. Phillips*, 192 W.Va. 392, 452 S.E.2d 708 (1994) ((failure to have smoke detectors was a breach of the landlord's duty to maintain premises in a safe condition); *Drager v. Aluminum Ind. Corp.*, 495 N.W.2d 879 (Minn.Ct. App.1993) (genuine issue of fact remained and precluded summary judgment as to whether landlord was liable for a faulty window screen)).

permission, and at the same time withhold such permission after two explicit requests for repairs.

*Id.* at 441.

Where the landlord does not have exclusive control over the ineffective device or the premises, courts have held that the landlord will not be liable. *Plott v. Cloer,* 219 Ga.App. 130, 464 S.E.2d 39 (1995); *Walls v. Oxford Mgmt. Co., Inc.,* 137 N.H. 653, 633 A.2d 103, 105 (1993). In *Plott* the landlord notified the tenant of a criminal attack in the area. The tenant left open a second floor window, and an assailant entered through this window and attacked the tenant. The landlord was not in exclusive control of the opening or securing of the window. There was no allegation of a defective lock. The landlord was not held liable. In our case the plaintiffs claim that the landlord refused their request to install deadbolts at their own cost, which the landlord denies. If the plaintiffs are found to be correct then it follows that the landlord retained exclusive control over the locks.

■ This is not a case where the plaintiffs' claim is based solely upon a landlords' failure to provide their home with strong locks. There are other facts alleged, several of which are controverted by the landlord, which could materially bear upon the reasonableness of the landlords' behavior and the foreseeability of the plaintiff's injury. Tenants claim that they were told they could not put deadbolt locks on the doors, even at their own expense. Landlords dispute this statement. The security expert stated that the home was in a high crime neighborhood, and that the locks on the duplex were "inadequate." Furthermore, Tenants allege that a frightening prior attempted break-in had been reported to Landlords, with another request for deadbolts. The landlord does not remember this. With these facts in dispute summary judgment was improper.

■ Landlords also assert that the Residential Landlord and Tenant Act did not impose a duty on them because the duty to maintain a safe premises does not extend to single-family dwellings. Title 41 O.S.Supp. 1995 § 102 defines "single-family residence" as:

   ...a structure used and maintained as a single dwelling unit. A dwelling unity, including those with common walls, shall be deemed a single-family residence if it has direct access to a street or thoroughfare and shares neither heating facilities, hot water equipment, nor other essential facility or service with any other dwelling unit;

The residence occupied by the Cordes is referred to as a duplex. There are insufficient facts in the summary judgment record to show whether the duplex is within the definition of "single-family residence." But, regardless of whether it is or is not so considered under the Act, tenants may pursue their common law remedies for negligence. *Wagoner v. Bennett,* 814 P.2d 476 (Okla. 1991). The Act is not the exclusive means by which a landlord or tenant may be held accountable for damages. *Id.*

The summary judgment of the District Court is reversed. The opinion of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

ALMA WILSON, C.J., KAUGER, V.C.J., and LAVENDER and WATT, JJ., concur.

HODGES, SIMMS, HARGRAVE and OPALA, JJ., dissent.