Karrlinda BISHOP, a minor, By and Through her Mother and Next Friend, Delsa CHILDERS; and Delsa Childers; individually, Appellants,

v.

Irene CARROLL, Appellee,

v.

Virginia VanSCOY and Gene VanScoy, Defendants.

No. 80486.

Court of Appeals of Oklahoma, Division No. 2.

March 8, 1994.

Ronald V. Collier, Collier Law Office, Oklahoma City, for appellants.

Brian Husted, Edmonds, Cole, Hargrave, Givens & Witzke, Oklahoma City, for appellee.

RAPP, Judge.

Trial court plaintiffs, Karrlinda Bishop and Delsa Childers, her mother and next friend, appeal the trial court's grant of summary judgment in favor of the defendant, Irene Carroll.[1]

The facts are simple. The defendant, Irene Carroll, purchased a house in Oklahoma City as a residence for her daughter, Renee. The daughter lived in the house a short time and then rented it to acquaintances, the VanScoys, who had three children and three Rottweiler dogs, including the dog involved in the attack, Rowdy. Carroll did not visit the house after her daughter moved. The VanScoys sent their rental payments to Carroll, who was an absentee landlord, living in Washington, D.C.

The plaintiff, Karrlinda, is a three-year-old child who lived two houses down and across

---

1. Default judgment was taken against the other defendants, the VanScoys, the tenants of the property.

an intersection from the VanScoys. The child's mother had observed the VanScoy children with dogs in their front yard, with no evidence of aggression evidenced by the dogs. Karrlinda was at the VanScoys' house playing and the dog, "Rowdy," was chained in the back yard. *Exactly* what happened is not known. It is sufficient to state that the child did get into the back yard and was attacked by Rowdy, a dog which had exhibited past conduct[2] sufficient to classify it as "vicious" under the Oklahoma City ordinances.[3]

Karrlinda and her mother brought suit against the VanScoys and Carroll. Carroll filed a motion for summary judgment, which was granted. Plaintiffs appeal.

Plaintiffs allege the trial court erred in failing to hold Carroll liable as an absentee landlord for harboring a vicious dog. The plaintiffs assert this liability arises because Carroll's daughter, Renee, in leasing the house, knew the VanScoys had dogs. Plaintiffs, in support of their appeal, rely primarily upon *Hampton ex rel. Hampton v. Hammons*, 743 P.2d 1053 (Okla.1987), in which the father of the owner of a pit bull dog kept the dog on his property. There was evidence the pit bull dog was chained close to another dog to increase its aggressiveness, and that the pit bull dog as a breed was known for its vicious propensities.

Plaintiffs urge here extension of *Hampton* to this matter. This we are unable to do for the reasons set out below. There was no evidence that:

1. The attacking dog, "Rowdy," was of a vicious breed;

2. Carroll's daughter had any knowledge the dog Rowdy was of a vicious propensity;

3. Carroll had any direct knowledge dogs were kept on the rental premises;

4. Carroll in any way contributed to the maintenance of the dog Rowdy;

5. Carroll had or exercised any care, custody or control over the actions of the dog Rowdy; or

6. Carroll in any manner violated the Oklahoma City ordinance by "harboring" a vicious animal.

Under the above facts, Carroll cannot be forced into a set of tort elements from which liability would attach to her for an alleged violation of the Oklahoma City ordinance or an extension of *Hampton* based upon a "harboring" rationale. Moreover, we are persuaded by the application of the language in *Clemmons v. Fidler*, 58 Wash.App. 32, 791 P.2d 257, 259 (1990), stating that prior cases had given the wrong impression in that the cases:

> mentioned that there was no evidence that the property owners in question had knowledge or reason to know that the dogs were on the property or had vicious tendencies, and observed in dicta that had the defendant property owners known of the dog and its tendencies, a different question might have been presented. These dicta fostered the impression that if the property owners or landlords knew of the dog's tendencies, liability would attach.... *This impression should be dispelled.* The common law rule, which is the settled law of Washington, is clear: only the owner, keeper, or harborer of such a dog is liable.

---

**2.** The dog had, prior to biting Karrlinda, attacked a neighbor and the postman.

**3.** The Oklahoma City ordinance states in pertinent part:

It shall be unlawful for any person to harbor, possess, or maintain, within the City limits, any dog which is determined to be vicious as defined by the ordinances of The City....

As used in this division:
(1) *Owner* means any person, firm, or corporation keeping, possessing, harboring or having the care or custody of a dog.

(2) *Vicious dog* means:
a. A dog which, while unleashed and off the premises of its owner, has attacked a human being or a domestic animal without provocation; or
b. A dog which, while unleashed and off the premises of its owner, has bitten a human being or a domestic animal without provocation; or
c. Any dog owned or harbored primarily or in part for the purpose of dog fighting, or any dog trained for dog fighting.

The landlord of an owner, keeper or harborer is not. (Citations omitted.)

Summary judgment should be granted where the facts set forth in detail in affidavits, depositions, admissions and other items of the record show there is no substantial controversy as to any material facts. *Weeks v. Wedgewood Village,* 554 P.2d 780 (Okla. 1976). There is here no evidence of record of a substantial controversy upon which reasonable men could disagree and which would allow liability to attach to the defendant Carroll for this unfortunate incident.

The decision of the trial court is affirmed.

BOUDREAU, P.J., and REIF, C.J., concur.